# HAGAN v. SCOTTISH INSURANCE COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 206.  Argued April 8, 1902.—Decided June 2, 1902.

Where a marine policy is taken out upon a blank policy providing by many of its terms for insurance on property or goods on land, it becomes doubly important to keep, and apply with strictness, the rule that the written shall prevail over the printed portion of a policy; as in such case the written, even more clearly than usual, will evidence the real contract between the parties; and courts will not endeavor to limit what would otherwise be the meaning and effect of the written language, by resorting to some printed provision in the policy, which, if applied, would change such meaning and render the written portion substantially useless and without application. If there be any inconsistency between the written provision of the policy and the printed portions thereof, the written language must prevail.

By virtue of the language contained in the policy, "on account of whom it may concern," it is not necessary that the person who takes out such a policy should have at that time any specific individual in mind; but if he intended the policy should cover the interest of any person to whom he might sell the entire or any part of the interest insured, that would be enough.

This court differs from the conclusion arrived at by the Circuit Court of Appeals in its statement that there was nothing in the case to support a finding that Hagan intended to insure a subsequent vendee of the boat, or of an interest therein, because of the retention in the policy of the provision that it should be entirely void, unless otherwise provided by agreement, if any change, etc., should be made; and holds that the very purpose of stating that the insurance was on account of whom it may concern was to do away with the printed provisions in regard to the sole ownership and to the change of interest and that was an agreement "otherwise provided," than in the printed portion of the policy.

THIS was a libel in admiralty by the petitioners, Peter Hagan and Edward F. Martin, on a policy of insurance issued by the Scottish Union and National Insurance Company, November 19, 1897, against loss or damage by fire to an amount, not exceeding $2000, on the tug boat Senator Penrose. The District Court made a decree for the libellants. 98 Fed. Rep. 129.

This decree was reversed by the Circuit Court of Appeals for the Third Circuit. 102 Fed. Rep. 919.

By the policy it is provided, among other things, that the company —

"In consideration of the stipulations herein named and of twenty-five dollars premium does insure *Peter Hagan and Company for account of whom it may concern* for the term of one year from the 19th day of November, 1897, at noon, to the 19th day of November, 1898, at noon, against all direct loss or damage by fire, except as hereinafter provided, to an amount not exceeding *two thousand* dollars, to the following-described property while located and contained as described herein, and not elsewhere, to wit:

"On the iron tug Senator Penrose, her hull, tackle, apparel, engines, boilers, machinery, appurtenances, furniture and supplies.

"Privilege to engage in such employment as may be incidental to her trade; also to lay up and haul out on railways and dry docks and to undergo alterations and repairs; also to use kerosene oil for lights.

"Other insurance permitted without notice until required.

"N. Y. and Penna. standard,

     "Percentage coinsurance clause.

"If at the time of fire the whole amount of insurance on the property covered by this policy shall be less than 80 per cent of the actual cash value thereof, this company shall, in case of loss or damage, be liable for only such portion of such loss or damage as the amount insured by this policy shall bear to the said 80 per cent of the actual cash value of such property.

"Attached to policy No. 2,139,457 Scottish U. & N. Insurance Co.

               "S. D. HAWLEY & SON,
                    "*Agents, Resident Managers.*

   *         *         *         *         *         *         *         *

"This entire policy, unless otherwise provided by agreement endorsed hereon or added hereto, shall be void if the insured now has, or shall hereafter make or procure, any other contract of insurance, whether valid or not, on property covered

in whole or in part by this policy; or if the subject of insurance be a manufacturing establishment, and it be operated in whole or in part at night later than ten o'clock, or if it cease to be operated for more than ten consecutive days; or if the hazard be increased by any means within the control or knowledge of the insured; or if mechanics be employed in building, altering or repairing the within-described premises for more than fifteen days at any one time; or if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building or ground not owned by the insured in fee simple; or if the subject of insurance be personal property and be or become incumbered by a chattel mortgage; or if with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed; or if any change other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured, or otherwise; or if this policy be assigned before a loss," etc.

The words " Peter Hagan and Company for account of whom it may concern " are written with a pen, while the paragraphs commencing with the words " On the iron tug," and ending with the words " S. D. Hawley & Son, Agent, Resident Managers," are in typewriting, and on a separate strip attached to the face of the policy.

In June, 1898, Peter Hagan, who obtained the insurance, sold one half interest in the tug to Edward F. Martin, and the latter held that interest at the time of the destruction of the tug by fire. No notice was given to the insurance company of the fact that Martin had acquired an interest in the boat. The respondents denied all liability to the plaintiffs because no notice was given of the change of ownership or of the interest in the tug by respective libellants as required by the terms of the policy.

*Mr. John Frederick Lewis* for petitioner. *Mr. Horace L. Cheney* was on his brief.

*Mr. Henry R. Edmonds* for respondent.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

The decision of this case turns upon the significance to be given to the written provision of the policy which provides for insuring "Peter Hagan and Company for account of whom it may concern."

In the District Court Judge McPherson said:

"The decision of the case depends upon the effect to be given to the words 'for whom it may concern.' This clause, so far as it may be in conflict with other language in the policy, must, upon familiar principles, be regarded as dominant. It expresses the special agreement of the parties, for it is in writing, while the conflicting provisions are in print; and general printed conditions usually give way to deliberately chosen written words. Moreover, even if the court doubted which provision should prevail, another well-known rule requires the policy to be construed against the company rather than against the insured; and, therefore, upon either ground, the clause now under consideration is controlling. . . . The first step, therefore, in a given case is to determine what interest the person taking out the policy intended to protect. It is not essential that he should have had any specific individual in mind. It is enough if he intended to protect the interest that afterwards passed to the person injured; and if he so intended, the policy may be adopted afterwards by a subsequent sole or partial owner of the interest, although such owner may have been unknown to the person taking out the insurance, or to the company, at the time the policy was written. In the present case I have no doubt (and I find the fact to be) that Hagan intended to insure, and to keep insured for one year, the entire title to the boat. He did not intend merely to protect such interest as he himself might have from time to time. If this had been his object the policy would more naturally have been taken out in his own name, omitting the qualifying phrase; but he intended to protect the ownership of the boat, whether vested in himself alone,

or shared with, or transferred to, other persons. This being his intention, and Martin having afterwards adopted the policy by the agreement of sale and by accounting for a proper share of the premium, I think no further difficulty exists. The facts bring the dispute within the rule laid down in *Hooper* v. *Robinson*, 98 U. S. 528, and in other cases to which reference need not be made."

The decree of the District Court was reversed by the Circuit Court of Appeals, with directions to dismiss the libel with costs. Judge Dallas, speaking for that court, said:

"It is true that the written terms of a policy will control where they are in plain conflict with its printed clauses; but no part of the instrument is to be rejected if it can be sustained as a whole, and in the present instance the printed provisions in question and the written words 'for account of whom it may concern,' are not irreconcilably repugnant. That the policy was issued for account of whom it might concern is undeniable, but whom could it concern? Possibly the then existing or future creditors of the boat, or perhaps the constituents of Peter Hagan and Company; but, no matter for whose account the insurance may have been effected, it cannot be supposed that it was taken for the benefit of any one who, by the express, though printed, terms of the contract, was distinctly excluded from having or acquiring any interest under it. It is not necessary to our conclusion that we should question the rule of law which was applied by the court below, and we do not do so. It is not doubted that a policy in the name of a special party, on account of whom it may concern, will cover the interest of the person for whom, it was intended by the party who ordered it, although the particular person intended was not known; but we find nothing in this case to support a finding that Hagan intended to insure a subsequent vendee of the boat, or of an interest therein. On the contrary, we think, as we have already said, that the retention in the policy of the provision that it should be entirely void if any transfer in interest, title or possession should be made, absolutely precludes the inference of an intent to make the policy applicable to any person claiming under or by virtue of such a transfer."

In these two extracts from the opinions delivered in the courts below we find the different views of the judges of those courts upon the question at issue. It is to be observed, in the first place, that the policy in question covers property on the water, viz., a tug boat, yet the printed portion of the policy shows that it was intended generally to be used for insuring property on land. A marine policy was made out upon blanks not intended for that kind of insurance. Consequently many of the printed provisions were wholly inapplicable to insurance of property on the water.

Where a marine policy is thus taken out upon a blank policy providing by many of its terms for insurance on property or goods on land, it becomes doubly important to keep, and apply with strictness, the rule that the written shall prevail over the printed portion of a policy, as in such case the written, even more clearly than usual, will evidence the real contract between the parties. Courts will not endeavor to limit what would otherwise be the meaning and effect of the written language, by resorting to some printed provision in the policy, which, if applied, would change such meaning and render the written portion substantially useless and without application.

In *Dudgeon* v. *Pembroke*, decided in the English House of Lords, in 1877, 2 App. Cas. 284, at 293, in speaking of this question of the difference between the written and the printed portions of a policy, and in delivering the opinion of the court, Lord Penzance said:

"My lords, the policy in this case is a time and not a voyage policy, and not only so, but an ordinary time policy. There can, I apprehend, be no doubt upon that point. It has been suggested that, by reason of the policy having been drawn up on a printed form, the printed terms of which are applicable to a voyage and also to goods as well as to the ship, the policy is something less, or something more, than a time policy. But the practice of mercantile men of writing into their printed forms the particular terms by which they desire to describe, and limit the risk intended to be insured against, without striking out the printed words which may be applicable to a larger or different contract, is too well known, and has been too constantly recognized in courts of law to permit of any such conclusion."

This rule is recognized and assented to by both courts below. If there be any inconsistency between the written provision of the policy and the printed portions thereof, the written language must prevail. It becomes necessary, therefore, to determine what is the meaning of the written portion of the policy, and what was intended by the parties by the language "on account of whom it may concern." Both courts below concur in the statement that a policy so worded will cover the interest of the person for whom it was intended by the party taking out the insurance, even though the particular person intended was not then known. It was said in the District Court that it was enough if the person taking out the insurance intended to protect the interest that afterwards passed to the person injured; that it was not essential that he should have had any specific individual in mind at the time when he took out the insurance. The opinion of the Court of Appeals concedes that a policy in the name of a special party, "on account of whom it may concern," will cover the interest of the person for whom it was intended by the party who ordered it, although the particular person intended was not known. But the Court of Appeals was unable to discover anything in the case to support a finding that Hagan (the person taking out the insurance) intended to insure a subsequent vendee of the boat or of an interest therein, because of the retention in the policy of the printed provision that it should be entirely void, unless otherwise provided by agreement, if any change in the interest, title or possession should be made. The retention of this printed provision, the court said, precluded the inference of any intent to make the policy applicable to any person claiming under or by virtue of such transfer.

We concur in the view that by virtue of the language contained in the policy, "on account of whom it may concern," it is not necessary that the person who takes out such a policy should have at that time any specific individual in mind. If he intended the policy should cover the interest of any person to whom he might sell the entire or any part of the interest insured, that would be enough. In *Hooper* v. *Robinson*, 98 U. S. 528, it was said that a policy upon a cargo in the name of A, on ac-

count of whom it may concern, will inure to the interest of the party for whom it was intended by A, provided he at the time of effecting the insurance had the requisite authority from such party or the latter subsequently adopted it. The facts in that case differ materially from those presented by this record, but the meaning of the language "on account of whom it may concern" is stated in the opinion of the court, and authorities are therein cited which show that it is not necessary that at the time of effecting the insurance the person taking it out should intend it for the benefit of some then known and particular individual, but that it would cover the case of one having an insurable interest at the time of the happening of the loss, and who was intended to be protected at the time the party took out the insurance.

In 1 Phillips on Insurance it is stated:

"SEC. 385. The rule, that an insurance 'for whom it may concern' will avail in behalf of the party for whom it is intended, does not mean that any specific individual must be intended. . . . But he may intend it for whatever party shall prove to have an insurable interest in the specified subject, in which case it will be applicable to the interest of any person subsequently ascertained to have such an insurable interest, who adopts the insurance.

"SEC. 388. One may become a party to the insurance effected in his behalf, in terms applicable to his interest, without any previous authority from him, by adopting it, either before or after a loss has taken place and is known to him, though the loss may have happened before the insurance was made."

In 2 Duer on Marine Insurance, p. 28, it is stated as follows:

"In England, the policy in its usual and almost invariable form contains a general clause, the terms of which are sufficiently comprehensive to embrace all persons who have an insurable interest in the property, and a lawful right to be insured. The insurance is expressed to be ' in the name of A. B., (the person effecting the policy,) as well in his own name as for and in the name and names (without specification) of all and every other person and persons, to whom the same (the property insured) doth, may or shall appertain, in part or in all.' In the

United States, as on the continent of Europe, the general clause
is framed in various forms of expression, and the construction
necessarily varies, as the terms used are, more or less, extensive
in their application. In some cases the insurance is expressed
to be ' on account of the owners.' In some, on ' account of. a
person or persons, to be thereafter named ; ' but its most usual
form is, ' on account of whom it may concern.' An insurance
on account of the ' owners,' is probably limited to those who
have a legal interest in the subject insured. But the words,
' on account of whom it may concern,' are coextensive in their
possible application, with the general clause of the London pol-
icy."

And the learned author adds in a note the following :

" The Philadelphia policies retain the English form ; and why
it has been departed from in any of the cities of the Union, it
is not easy to understand. The words are the most compre-
hensive and significant that could be chosen, since they apply
not only to all persons, but to every species of interest. As the
clause, however, ' for whom it may concern,' has received the
same construction, it is not now necessary to alter it."

The English form insures the person to whom the property
insured " doth, may or shall appertain," thus insuring the owner
or one who has an interest in the property at the time when
the loss occurs. And the author says the words " on account
of whom it may concern" have the same significance as the
language used in the English form.

We are constrained to differ from the conclusion arrived at
by the Circuit Court of Appeals in its statement that there was
nothing in the case to support a finding that Hagan intended
to insure a subsequent vendee of the boat, or of an interest
therein, because of the retention in the policy of the provision
that it should be entirely void, unless otherwise provided by
agreement, if any change, etc., should be made. It seems to us
that the very purpose of stating that the insurance was on ac-
count of whom it may concern was to do away with the printed
provisions in regard to the sole ownership and to the change of
interest. It was an agreement " otherwise provided," than in
the printed portion of the policy. It provided for the happen-

ing of a contingency by which at the time of the loss the person taking out the insurance might not be the sole and unconditional owner of the thing insured because of a change in the interest or title happening by the act of such person between the time of taking out the insurance and the occurrence of the loss. This, we think, was the intention of the party taking the insurance, to be arrived at by reading the written language of the policy and by reference to the fact that he intended to insure the whole title, and not his mere interest therein from time to time. Otherwise we do not see what effect is given to the written portion of the instrument.

There is no doubt, and the District Court so found, that Hagan intended by the policy to secure the insurance upon the entire title, and he therefore intended thereby to protect that title during the running of the policy, and when the clause is added in writing that it was issued on account of whom it may concern, it shows that he intended that such title should be protected in the hands of any person to whom he might transfer the same or any portion thereof. If otherwise, and the intention were only to protect his own interest, the policy, as stated by the District Judge, would naturally have been taken out in his own name, omitting the qualifying phrase, on account of whom it may concern. This phrase was put in for some purpose, and such purpose was, as it seems to us, to protect the whole title without making it necessary to notify the company and obtain its consent to any transfer of interest.

At the time when Hagan took out the policy he was sole owner, and unless he intended the written words to apply to those to whom he might afterwards assign his interest or some portion thereof, the language would seem to fill no purpose.

If the policy were to become void in case of a transfer of all or any part of the interest of the person taking out the insurance unless the company were notified and provided by agreement endorsed on the policy for such change, we do not see that any alteration in its terms and meaning was accomplished by the insertion of the phrase in question. By the interpretation contended for by the company, it would have the same right, if the written provision were contained therein,

to refuse to otherwise provide by agreement for the transfer of an interest, that it would have if such provision were stricken out, and the terms of the policy would in truth be unaltered by the insertion of that provision. We think this would be a totally different result from that contemplated by the parties. The words "on account of whom it may concern" do not refer to those interested in the policy simply at the time it is taken out. The terms refer to the future. It is not a question of the persons concerned when it is taken out, but of those who may be concerned when the loss may occur, and who were within the contemplation of him who took out the insurance at the time that he did so. It is on account of those who in the future, at the time of the happening of a loss, have the insurable interest and in regard to whom the policy will be applied. We think this the common sense interpretation of the language used and that it is justified and required by the authorities, many of which are cited in *Hooper* v. *Robinson, supra.*

*Northern Assurance Company* v. *Grand View Building Association*, 183 U. S. 308, has no bearing upon this case. There the party insured proved by parol an alleged waiver, by the general agent of the company, of one of the conditions in the policy which required that such waiver should only be given in writing and endorsed on the policy. It was contended that the company was estopped because of the conduct of the agent in the existing circumstances, in issuing such policy and taking the premium, from setting up and claiming the benefit of the condition. This court held that the evidence was improperly received, and reversed the judgment.

In this case there is no question of receiving parol evidence to alter or change any condition in the policy. It is simply a question of construction as to the meaning of the language used in the policy, and as to the intention of the party taking it out, and whether the written portion (the intention of the party being as stated) is inconsistent with any printed portion thereof; and if so, whether it should prevail as against such printed portion. We think the written portion is inconsistent with the printed condition as to change of interest, and as to sole ownership, and there being such inconsistency the written portion

must be held to cover the assignee of a part interest in the tug, as intended at the time by the party taking out the insurance.

*The judgment of the Circuit Court of Appeals must be reversed, and that of the District Court of the United States for the Eastern District of Pennsylvania affirmed, and it is so ordered.*

MR. JUSTICE GRAY did not hear the argument and took no part in the decision of this case.